DISTRICT OF OREGON
**F I L E D**
May 24, 2019
Clerk, U.S. Bankruptcy Court

Below is an order of the court.

*/s/ Trish M. Brown*
TRISH M. BROWN
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>COLONIAL OAKS MOBILE HOME PARK, LLC,<br><br>        Debtor. | Case No. 18-33183-tmb11<br><br>ORDER GRANTING DEBTOR'S MOTION FOR APPROVAL OF BIDDING PROCEDURES, OVERBID PROTECTIONS AND EXPENSE REIMBURSEMENTS, AND FORM OF NOTICE OF BID PROCEDURES |

This matter came before the Court on April 3, 2019, on the Motion for Order Approving Bidding Procedures, Overbid Protections, Expense Reimbursements, and Form of Notice of Bid Procedures [Docket No. 105] (the "Motion") filed by Colonial Oaks Mobile Home Park, LLC (the "Debtor"). The Court, and having considered the submissions and arguments of counsel and the files and records herein, and being now fully advised of the premises,

THE COURT FINDS as follows:

    A.    This Court has core jurisdiction over Debtor's chapter 11 case (the "Bankruptcy Case"), this Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and

Page 1 of 5

{00268178:2}

ORDER APPROVING BID PROCEDURES, OVERBID PROTECTIONS AND EXPENSE REIMBURSEMENT, AND FORM OF NOTICE OF BID PROCEDURES

Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 18-33183-tmb11    Doc 125    Filed 05/24/19

1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  The notice provided regarding the Motion and the hearing on the Motion and the bidding procedures described therein and attached hereto as **Exhibit A** (the "Bid Procedures") constitutes sufficient and adequate notice. No other or further notice in connection with the entry of this Order is or shall be required.

C.  The Bid Procedures were proposed by Debtor in good faith with the goal of maximizing the value of the Acquired Assets (defined below) for the benefit of creditors and the estate. Debtor has articulated good and sufficient reasons for authorizing and approving the Bid Procedures attached hereto as **Exhibit A**, which are reasonable and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Acquired Assets.

D.  The Bid Procedures (including the Expense Reimbursement as defined in the PSA) are fair and reasonable. The Bid Procedures represent an exercise of Debtor's sound business judgment and will facilitate an orderly sale process, and are in the best interests of the estate.

E.  On or about February 25, 2019, the Debtor entered into a Purchase Agreement (the "PSA") with Park Preservations, LLC ("Purchaser") providing for the sale of Debtor's real estate, improvements and related assets. The PSA is attached as Exhibit 1 to the Motion. The assets to be sold include the real property, fixtures, and improvements commonly known as 934 S. Main Street, Independence, Oregon, and more particularly described on Addendum C to the PSA, together with all related permits, documents, rights, and books and records in Seller's possession or reasonable control, as more specifically described and defined in the PSA (the "Acquired Assets").

F.  Entry of this Order is in the best interests of Debtor, its estate, creditors, and other parties in interest.

Page 2 of 5   ORDER APPROVING BID PROCEDURES, OVERBID PROTECTIONS AND EXPENSE REIMBURSEMENT, AND FORM OF NOTICE OF BID PROCEDURES

{00268178:2}

Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 18-33183-tmb11    Doc 125    Filed 05/24/19

NOW THEREFORE, IT IS HEREBY ORDERED as follows:

1. The Motion is GRANTED. The Bid Procedures attached hereto as **Exhibit A** are hereby approved and shall be used in connection with the proposed sale of the Acquired Assets.

2. All responses or objections to the relief requested in the Motion concerning the Bid Procedures and the Notice Procedures that have not been withdrawn, waived, settled or resolved at the hearing held on April 3, 2019, are overruled.

3. Debtor has filed a motion seeking approval of a sale of the Acquired Assets to Purchaser or a Successful Bidder other than Purchaser, resulting from the process described in the Bid Procedures, free and clear of liens, claims, interests, and encumbrances (Docket No. 122) (the "Sale Motion"). Any objections to the proposed sale shall be filed no later than **June 13, 2019 (the "Objection Deadline")**. Objections must be in writing, be filed with this Court and served on the following parties: (a) Nicholas J. Henderson, Motschenbacher & Blattner, LLP, 117 SW Taylor St., Suite 300, Portland, OR 97204, counsel for Debtor Colonial Oaks Mobile Home Park, LLC; and (b) the Office of the United States Trustee for the District of Oregon, 620 SW Main Street, Suite 213, Portland OR 97205 ("Notice Parties"). Any party filing an objection to the Sale Motion must attend the hearing on the Sale Motion (the "Sale Approval Hearing") and advocate its objection at such hearing. Any objection not filed, served, and/or advocated in accordance with this paragraph shall be deemed waived and shall be forever barred.

4. Any Auction (as defined in the Motion) for the Acquired Assets will be held on **June 14, 2019, at 10:00 a.m. Pacific Time**, at the offices of Motschenbacher & Blattner, LLP, 117 SW Taylor St., Suite 300, Portland, OR 97204.

5. The Sale Approval Hearing will be conducted on **June 18, 2019, at 11:30 a.m. Pacific Time**, in United States Bankruptcy Court for the District of Oregon, at: 1050 SW 6th

Page 3 of 5   ORDER APPROVING BID PROCEDURES, OVERBID PROTECTIONS AND EXPENSE REIMBURSEMENT, AND FORM OF NOTICE OF BID PROCEDURES

{00268178:2}

Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 18-33183-tmb11    Doc 125    Filed 05/24/19

Avenue #700, Courtroom # 4, Portland, OR 97204, at which time Debtor will present for approval by this Court the Successful Bid (as defined in the Bid Procedures) (if there is an Auction) or the PSA with the Purchaser (if there is not an Auction), pursuant to the provisions of Sections 105, 363(b), 363(f), 363(m), 365 and 1146(a) of the Bankruptcy Code. Debtor shall be deemed to have accepted a bid only when the bid for the Acquired Assets has been approved by the Court at the Sale Approval Hearing

6. The Expense Reimbursement obligation (the "Expense Reimbursement") presented in Paragraph 13 of the Motion and contained and defined in the PSA are approved. Debtor is authorized to pay the Expense Reimbursement of up to $25,000 to compensate Purchaser for its reasonable out-of-pocket expenses paid to third parties and reasonable amounts incurred by Purchaser (including overhead expenses) in pursuing a purchase of the Acquired Assets. The Expense Reimbursement shall be treated as a first priority administrative expense claims in the Bankruptcy Cases under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, and is not subject to subordination or proration.

7. Further, the Expense Reimbursement shall be paid as a cost of sale from the proceeds at closing and set aside in escrow or a trust account pending notice and an opportunity to object. Such payment shall be prior to the payment of the proceeds of such sale to any third party asserting a lien on the Acquired Assets and shall be free and clear of any such lien. Notice of the amount sought, including an itemization of the expenses, shall be provided to the Debtors and the U.S. Trustee. Absent any objection received with seven (7) days of such notice, the amount requested shall be paid from the escrow or trust account. In the event of a timely objection, any undisputed amount of the Expense Reimbursement may be paid to Purchaser with the disputed amount continued to be held in escrow pending a Court determination of the amount awarded.

Page 4 of 5    ORDER APPROVING BID PROCEDURES, OVERBID PROTECTIONS AND EXPENSE REIMBURSEMENT, AND FORM OF NOTICE OF BID PROCEDURES

{00268178:2}

Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 18-33183-tmb11    Doc 125    Filed 05/24/19

8. The failure of any third party to file and serve an objection as ordered and directed herein shall be deemed the consent of such a party to the granting of the Sale Motion and the Assumption Motion, and to the sale and transfer of the Acquired Assets to Purchaser or the Successful Purchaser.

9. All bidders are deemed to have submitted to the jurisdiction of this Court with respect to all matters related to this Motion, the Sale Motion.

10. This Court retains jurisdiction with respect to all matters arising from or related to implementation of this Order.

11. As provided by Bankruptcy Rules 6004(h), this Order shall not be stayed for 14 days after the entry thereof and shall be effective and enforceable immediately on its entry on the docket.

12. Unless otherwise specified, all time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

###

I certify that I have complied with the requirements of LBR 9021-1(a)(2)(A).

PRESENTED BY:

MOTSCHENBACHER & BLATTNER LLP

By:/s/Nicholas J. Henderson
    Nicholas J. Henderson, OSB #074027
    Of Attorneys for Debtor-in-Possession
    Colonial Oaks Mobile Home Park, LLC

Page 5 of 5    ORDER APPROVING BID PROCEDURES, OVERBID PROTECTIONS AND EXPENSE REIMBURSEMENT, AND FORM OF NOTICE OF BID PROCEDURES

{00268178:2}

Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 18-33183-tmb11    Doc 125    Filed 05/24/19

**Exhibit A**
**Bid Procedures Notice**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In re | Bankruptcy Case No. |
|---|---|
| Colonial Oaks Mobile Home Park, LLC | 18-33183-tmb11 |
| | **NOTICE OF BIDDING PROCEDURES** |
| Debtor-in-Possession. | |

      These bidding procedures (the "<u>Bidding Procedures</u>") have been approved by an order of the United States Bankruptcy Court for the District of Oregon (the "<u>Bankruptcy Court</u>") entered on _____, 2019 [Docket No. _____] (the "<u>Bid Procedures Order</u>") in the above-captioned Chapter 11 case (the "<u>Chapter 11 Case</u>") of Colonial Oaks Mobile Home Park, LLC (the "<u>Debtor</u>").

      1.     These Bidding Procedures set forth the process by which Debtor is authorized to conduct a bidding process and auction (the "<u>Auction</u>") for the sale the ("<u>Sale</u>") of certain assets (the "<u>Acquired Assets</u>") on the terms substantially set forth in the Purchase Agreement, dated as of February 25, 2019, and attached as Exhibit 1 to Debtor's Motion for Approval of Bidding Procedures, Overbid Protections and Expense Reimbursement, and Form of Notice of Bid Procedures (the "<u>PSA</u>"), by and among Debtor and Park Preservations, LLC (the "<u>Stalking Horse Bidder</u>"). The Acquired Assets consist of the real property and improvements located at 934 S. Main Street, Independence, Oregon, more particularly described in **Exhibit A-1** attached hereto.

      The Sale of the Acquired Assets will be implemented pursuant to the terms and conditions of the PSA, as the same may be amended pursuant to the terms hereof, subject to the receipt of higher and otherwise better bids in accordance with these Bidding Procedures. Please take notice that all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the PSA.

> **Copies of the Bidding Procedures Order, the PSA, and other documents related thereto are available upon request to Debtor's counsel, by telephone at (503) 417-0500, or by e-mail at mperry@portlaw.com**

    **A.**    **Approval of Stalking Horse Bid Protections.**

      The Bidding Procedures Order approved, among other things, a reimbursement of all reasonable costs and expenses of Stalking Horse incurred in connection with Stalking Horse Bidder's efforts to purchase the Acquired Assets and in negotiating and consummating the transactions contemplated by the PSA (including, without limitation, the fees and expenses of counsel), up to $25,000 (the "<u>Expense Reimbursement</u>"). The Expense Reimbursement is payable to the Stalking Horse Bidder upon the Debtor consummating, an Alternative

Page 1 of 9 – NOTICE OF BIDDING PROCEDURES

{00250885:4}

Transaction, as defined in the PSA.

B. **Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a Bid (a "Potential Bidder") must, **on or before June 11, 2019, at 5:00 p.m**. (Pacific Time) (the "Bid Deadline") deliver (unless previously delivered) the following documents along with an offer for the Acquired Assets in accordance with Section D below (the "Bid Documents"):

1. an executed confidentiality agreement on terms reasonably acceptable to the Debtor and containing terms in the aggregate no less favorable to the Debtor in any material respect (other than with respect to the effective periods and the non-disclosure and non- solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the Stalking Horse Bidder and the Debtor (the "Confidentiality Agreement"); and

2. proof by the Potential Bidder of its financial capacity to close a proposed transaction, as required by this Notice, which may include current unaudited or verified financial statements of, or verified non-contingent financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which must be satisfactory to Debtor.

The Bid Documents shall be delivered to the following parties (collectively, the "Notice Parties"):

| Debtor | Counsel for Debtor |
|---|---|
| Colonial Oaks Mobile Home Park, LLC<br>PO Box 389<br>Clackamas, OR 97015 | Nicholas J. Henderson,<br>Motschenbacher & Blattner LLP<br>117 SW Taylor St., Suite 300<br>Portland, OR 97204 |

Within forty-eight (48) hours after a Potential Bidder delivers the Bid Documents, Debtor shall determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Bid Documents so that the Potential Bidder may conduct a due diligence review with respect to the Acquired Assets. Only those Potential Bidders that have submitted acceptable Bid Documents (each, an "Acceptable Bidder") may submit bids. The Stalking Horse Bidder shall at all times be deemed an Acceptable Bidder.

C. **Access to Due Diligence.**

Only Acceptable Bidders shall be eligible to receive due diligence and access to additional non- public information. Debtor shall provide to each Acceptable Bidder

reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder.  To the extent Debtor provides any information to any Acceptable Bidder that they had not previously provided to the Stalking Horse Bidder, Debtor shall promptly provide such information to the Stalking Horse Bidder.  The due diligence period will end on the Bid Deadline (as defined herein) and Debtor shall have no obligation to furnish any due diligence information after the Bid Deadline.

In connection with the provision of due diligence information to Acceptable Bidders, Debtor shall not, except with respect to the Acquired Assets, furnish any other confidential information relating to the Debtor, the Debtor's assets or liabilities, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.  Debtor shall provide to Stalking Horse Bidder any due diligence information provided to Acceptable Bidders that was not previously provided to Stalking Horse Bidder.

Debtor along with its advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided, however,* Debtor may decline to provide such information to Acceptable Bidders who, in Debtor's reasonable business judgment have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

Each Acceptable Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets and liabilities that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Acquired Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or the PSA. Neither the Debtor nor any of its employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

**D.     Bid Requirements.**

To be eligible to participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must, by the Bid Deadline, deliver to (i) the Debtor, and (ii) Debtor's counsel, which shall be shared with the Stalking Horse Bidder within one (1) business day following receipt thereof, a written, irrevocable offer that must be determined by the Debtor to satisfy each of the following conditions:

1. **Bidder Identity and Authorization.**  Each Bid must fully disclose the

identity of each entity that will be participating in such bid and the name of any affiliates, insiders, or former insiders of the Debtor that participated in submitting the bid, including any proposed designee(s). Further, each Bid must provide written evidence that the Acceptable Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and execution and delivery of the necessary transaction documents, or a representation that no such authorization and approval is required.

2. **Minimum Bid Amount.** The minimum opening bid from any Acceptable Bidder must include a cash purchase price that is at least $2,275,000 (*i.e.*, the sum of the maximum Expense Reimbursement and an initial bid increment of $50,000) greater than the cash purchase price set forth in the PSA;

3. **Bid Deposit.** Each Bid (other than the Stalking Horse Bid) must be accompanied by a cash deposit of $25,000 (the "Good Faith Deposit"), which shall be sent to Escrow by wire transfer;

4. **Good Faith Offer.** Each Bid must constitute a good faith, bona fide offer to purchase the Acquired Assets;

5. **Same or Better Terms**. Each Bid must be accompanied by clean and duly executed transaction documents, along with a copy of the PSA that is marked to reflect the amendments and modifications from such agreement, which modifications may not be materially more burdensome to Debtor than the PSA or inconsistent with these Bidding Procedures;

6. **Alternative Transactions**. Debtor may consider a bid proposing a transaction other than a sale as set forth in the PSA so long as such bid (i) proposes a transaction that would close substantially in the same time frame as the Initial Bid; and (ii) is not subject to or conditioned upon any financing contingencies or the outcome of due diligence. Debtor reserves the right to aggregate separate bids in determining whether one or more of a combination of bids, in the aggregate, constitute a higher or otherwise better offer;

7. **No Contingencies.** A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, (iii) the outcome or completion of a due diligence review by the Acceptable Bidder; and/or (iv) any third-party consents;

8. **Irrevocable.** Each Bid must remain irrevocable until the closing of the Successful Bid (as defined below);

9. **Joint Bids.** Debtor will be authorized to approve joint Bids in Debtor's exercise of its reasonable good faith business judgment on a case-by-case basis, subject to Section 363(n) of the Bankruptcy Code;

10. **Adequate Assurance Information.** Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the satisfaction of the Debtor, following consultation with its

advisors, that such Acceptable Bidder (i) has the financial wherewithal and ability to consummate in the Sale of the Acquired Assets and the assumption of liabilities as set forth the PSA, including payment of any cure amount that will be paid by the purchaser with respect to any contract that may be assigned with respect to the Sale. The Bid shall also identify a contact person that counterparties to any lease or contract may contact to obtain additional Adequate Assurance Information;

11. **No Fees.** The Bids must not be subject to any break-up fee, transaction fee, termination fee, expense reimbursement or any similar type of payment or reimbursement.

12. **Jurisdiction.** Each bidder consents to the jurisdiction of the Bankruptcy Court as to all matters and disputes arising out of or related to the Bid, the Auction, the Sale, and all related matters.

E. **Qualified Bids.**

Bids, or a combination of one or more Bids, fulfilling all of the preceding requirements shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders."

Within two (2) days after the Bid Deadline, Debtor shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any Bid that is not deemed a "Qualified Bid" shall not be considered by Debtor.

The Stalking Horse Bidder shall be deemed to be a Qualified Bidder. The PSA submitted by the Stalking Horse Bidder shall be deemed a Qualified Bid, qualifying the Stalking Horse Bidder to participate in the Auction.

F. **Bid Deadline.**

Qualified Bids must be received by each of the Debtors, their counsel, and the Debtor Contact, in each case so as to be actually **received no later than the Bid Deadline of June 11, 2019, at 5:00 p.m. (prevailing Pacific Time).**

G. **Evaluation of Qualified Bids.**

Prior to the Auction, Debtor shall evaluate Qualified Bids and, in consultation with its advisors, identify the Qualified Bid that is, in Debtor's judgment, the highest or otherwise best bid (the "Starting Bid"). Within 24 hours of such determination, but in no event later than two (2) business days prior to the date of the Auction, Debtor shall notify the Stalking Horse Bidder and the other Qualified Bidders as to which Qualified Bid is the Starting Bid. Debtor shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

**H. No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the PSA will be deemed the Successful Bid (as defined herein) and Debtor will pursue entry of an order by the Bankruptcy Court approving the PSA and authorizing the Sale of the Acquired Assets to the Stalking Horse Bidder at the Sale Hearing.

**I. Auction.**

If one or more Qualified Bids is received by the Bid Deadline, then Debtor shall conduct the Auction with respect to the Acquired Assets. The Auction shall commence on **June 14, 2019, at 10:00 a.m. (Pacific Time)** at the offices of Motschenbacher & Blattner, LLP, 117 SW Taylor St., Suite 300, Portland, OR 97204, or such later time or other place as the Debtor shall timely notify the Stalking Horse Bidder and all other Qualified Bidders upon 24 hours' notice.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures")

a. the Auction will be conducted openly;

b. only the Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

c. the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

d. only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtors, and their respective advisors, shall be permitted to attend the Auction;

e. bidding at the Auction shall begin at the Starting Bid; subsequent Bids at the Auction, including any Bids by Stalking Horse Bidder, shall be made in minimum increments of $50,000 net value to Debtor;

f. bidding rounds shall continue until no Qualified Bidder has made a bid during a bidding round, whereupon the last highest and best bid at the close of the immediately preceding round shall, subject to Section J below, be deemed the Successful Bid (as defined below). Bidding rounds will last no longer than 15 minutes, and the bidding round will end if new bids are not communicated by Bidders during that time period;

g. each Qualified Bidder will be informed of the terms of the previous Bids;

h. the bidding will be transcribed or videotaped to ensure an accurate recording of the bidding at the Auction;

**i.** at the beginning of each round, each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

**j.** absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider Bids made after the Auction is closed; and the Auction shall be governed by such other Auction Procedures as may be announced by Debtor after consultation with its advisors from time to time on the record at the Auction; <u>provided</u>, <u>that</u>, any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court or with the provisions of the PSA with respect to these Bidding Procedures; and

**k.** Any disputes that arise regarding the Auction shall be resolved by the Bankruptcy Court.

**J. Acceptance of the Successful Bid.**

Upon the conclusion of the Auction (if such Auction is conducted), Debtor, in the exercise of its reasonable, good-faith business judgment, shall identify the highest or otherwise best Qualified Bid that in the exercise of their fiduciary duties Debtor in good faith believes is materially more beneficial to Debtor than the Stalking Horse Bid (the "<u>Successful Bid</u>"), which will be determined by considering, among other things:

**1.** the number, type and nature of any changes to the PSA as appropriate;

**2.** the total expected consideration to be received by the Debtor;

**3.** the likelihood of the bidder's ability to close a transaction and the timing thereof; and

**4.** the expected net benefit to the estates.

The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder". The Successful Bidder and Debtor shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

Debtor will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures and (d) consummation of the Successful Bid will provide the highest or otherwise best value for Debtor's assets and is in the best interests of Debtor's estate.

If an Auction is held, Debtor shall be deemed to have accepted a Qualified Bid only when (1) such Qualified Bid is declared the Successful Bid at the Auction and (2) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of the Sale Order approving such Successful Bid.

**K.  Sale Hearing.**

A hearing to consider approval of the Qualified Bid submitted by the Successful Bidder (or to approve the PSA if no Auction is held) (the "Sale Hearing") is presently scheduled to take place on **June 18, 2019 at 11:30 a.m.** (prevailing Pacific Time), or as soon thereafter as counsel may be heard, before the Honorable Trish M. Brown, United States Bankruptcy Judge in the United States Bankruptcy Court for the District of Oregon, 1050 SW 6th Ave #700, Courtroom # 4, Portland, OR 97204.

**L.  Designation of Back-Up Bidder.**

If for any reason the Successful Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best Bid (the "Back-Up Bidder"), as determined by Debtor after consultation with its advisors, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid (the "Back-Up Bid").

Debtor will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least twenty-four (24) hours advance notice, which notice will be filed with the Bankruptcy Court; it being understood that nothing herein shall require the Stalking Horse Bidder to be a Back-Up Bidder or its Bid to be a Back-Up Bid. In the event the Stalking Horse Bidder is designated as the Back-Up Bidder, the Stalking Horse Bidder may, at its election, terminate the PSA. In the event of such termination, and notwithstanding any other provision in this Notice, Stalking Horse Bidder would not have any liability to Seller, would be entitled to return of its Good Faith Deposit, and would be entitled to the Expense Reimbursement.

Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid shall remain open until the closing of the Successful Bid.

**M.  Expense Reimbursement.**

In the event that neither the Successful Bid nor the Back-Up Bid is made by the Stalking Horse Bidder (or the Stalking Horse Bidder elects not to have its bid be the Back-Up Bid), and Debtor consummates an Alternative Transaction, Debtor shall be obligated to pay to the Stalking Horse Bidder the Expense Reimbursement and any other amounts returnable to the Stalking Horse Bidder, in each instance in accordance with the applicable provisions of the PSA.

### N. Return of Good Faith Deposit.

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid for the Acquired Assets. Subject to Section L, above, if the Successful Bidder fails to consummate the Successful Bid, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, Debtor.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within two (2) business days after consummation of the Sale of the Acquired Assets.

The initial $25,000 deposit by the Stalking Horse Bidder will be held in a segregated, interest-bearing account (the "Account") at an escrow company approved by Debtor and the Stalking Horse Bidder, and pursuant to escrow instructions reasonably acceptable to both Debtor and the Stalking Horse Bidder. The full amount of the deposit, and any interest thereon, will remain in the account until disbursed pursuant to the terms of the PSA or further order of the Bankruptcy Court.

### O. Reservation of Rights.

Debtor reserves its rights to, in any manner consistent with Debtor's fiduciary duties and applicable law, modify these Bidding Procedures in any manner that will best promote the goals of the bidding process (subject to any restrictions set forth in the PSA) or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Acquired Assets (subject to any restrictions set forth in the PSA).

Notwithstanding anything herein or in the Bidding Procedures Order to the contrary, nothing will in any way impair or enhance, alter or otherwise affect any and all rights that any secured lender may have to "credit bid" pursuant to section 363(k) of the Bankruptcy Code or other applicable law.

# Exhibit A-1
Legal Description

PARCEL I:

A tract of land located in Section 28, Township 8 South, Range 4 West of the Willamette Meridian in the City of Independence, Polk County, Oregon, being more particularly described as follows:

Commencing at a point one chain South of the Southeast corner of Block 20 in HILL'S ADDITION TO HENRY HILL'S TOWN OF INDEPENDENCE, Polk County, Oregon, and running thence South 198 feet; thence West 165 feet to the West line of the alley in Block 20 produced; thence North 198 feet to a point 1 chain South of the West line of the alley in said Block Number 20; thence East to the point of beginning.

PARCEL II:

A tract of land located in Section 28, Township 8 South, Range 4 West of the Willamette Meridian in the City of Independence, Polk County, Oregon, being more particularly described as follows:

Beginning at the intersection of the West line of County Road M-9 and the South line of that tract of land conveyed to Martha A. Hill by instrument recorded June 13, 1910 in Book 53, Page 110, Deed Records for Polk County, Oregon; thence West 8.65 chains, more or less, along the North line of that tract of land conveyed to Arthur Clinton, et ux, by deed recorded January 2, 1946, in Book 122, Page 593, Deed Records for Polk County, Oregon to the East line of the Southern Pacific Railroad right of way; thence North 12 1/2° East 4.64 chains to a point formed by the intersection of the South line of "I" Street in HILL'S ADDITION TO HENRY HILL'S TOWN OF INDEPENDENCE with the East line of said Railroad right of way; thence East along the South line of "I" Street to the Northwest corner of that tract of land conveyed to John S. Kolski and Marjorie H. Kolski, husband and wife, by deed recorded October 16, 1957, in Book 165, Page 227, Deed Records for Polk County, Oregon; thence South 198 feet along the West line of said tract to the Southwest corner thereof; thence East 165 feet along the South line of said tract to the West line of said County Road M-9, thence Southerly along the West line of said County Road M-9 to the point of beginning.

PARCEL III:

The North 20 feet of the following described property:

Beginning at a point at an angle corner on the East line of that certain tract of land conveyed to Mountain States Power Company by deed recorded in Book 145, Page 710, Deed Records for Polk County, Oregon; said point being 804.00 South 12° 30' West and 400.00 feet North 88° 43' East and 148.85 feet North 01° 17' West from a point marked by the intersection of the East line of the Southern Pacific Railroad right of way with the South line of "I" Street, Independence, Polk County, Oregon; running thence North 01° 17' West 328.27 feet to the Northeast corner of said Mountain States Power Company tract; thence East 295.00 feet, more or less, to the West line of Market Road No. 9; thence South 08° 02' East 195.00 feet, more or less, to a point marking the Northeast corner of that certain tract of land conveyed to Hattie A. Sloper, by deed recorded in Volume 146 Page 137, Deed Records for Polk County, Oregon; thence South 88° 43' West 129.00 feet to an iron pipe; thence South 00° 18' West 133.56 feet to an iron pipe; thence South 88° 43' West 195.00 feet, more or less, to the point of beginning.

SAVE AND EXCEPT: That property deeded to LeRoy D. Sharr, described as Parcel II in Book 185, Page 1342, Deed Records for Polk County, Oregon, recorded March 27, 1985.